## James T. Leavitt *vs.* Joseph Savage & al.

A surety is entitled to have his contract executed according to its terms; and if the creditor before the day of payment make a new contract without the consent of the surety, whereby he gives time, and disables himself from compelling payment at the day by a suit at law, or places himself in such position that the debtor can in equity obtain an injunction against his proceeding, the surety is discharged.

If the contract be by an instrument under seal, the surety may be discharged by an extension of the time of payment, or of performance, by a writing *without seal.*

Yet if the contract extending the time be without consideration, it is not binding upon the creditor, and the surety will not thereby be discharged from his liability.

But the mere delay of the party to enforce payment at the time or in the manner provided in the contract, does not release a surety. Nor will the liability of the surety be discharged by the neglect of the creditor to enforce payment by a suit against the principal on the request of the surety.

Debt on a bond from *Savage* as principal, and *Dinsmore* as surety, to the plaintiff, dated *June* 7, 1836, reciting that *Savage* had been arrested on an execution in favor of the plaintiff, and which bond was to be void, if *Savage* should within six months notify the creditor and submit himself to an examination, &c. *Savage* notified the plaintiff, and submitted himself to an examination within the six months, on *Nov.* 14, 1836, and went through a partial examination before the Justices, but in their opinion he was not entitled to take the poor debtor's oath. The plaintiff and *Savage,* without any consideration paid, then entered into the following agreement in writing under their hands, but not under seal. " *Nov.* 14, 1836. I hereby agree not to commence any suit on the bond given by *Joseph Savage* and *Thomas Dinsmore,* surety, to me, when he was committed on my execution *June* 7, 1836, until the first day of *October,* 1837, and if by that time the said *Savage* shall pay me one half of said execution and all fees and costs, together with interest on the whole, and at the same time give me undoubted security for the balance, the said bond shall be considered as cancelled, otherwise to remain in full force. *James T. Leavitt.*"

There was sufficient time after the date of the writing for a new citation and examination before the expiration of the six months.

*Dinsmore* never requested the plaintiff to proceed on the bond. The parties agreed upon the facts, and submitted for the opinion of the Court, the question, whether *Dinsmore*, the surety, was discharged in consequence of said agreement.

The case was submitted without argument, by

*E. Allen & Leavitt* for the plaintiff, and by

*Bronson & Hutchinson* for the defendant, *Dinsmore*.

The opinion of the Court was by

SHEPLEY J. — A surety is entitled to have his contract executed according to its terms, and if any change be made in it to his prejudice and without his consent, he is discharged. The mere delay of the party to enforce it at the time or in the manner provided does not change the contract, or entitle the surety to complain of it, for it is his duty to see, that the principal performs as he has agreed. Nor can the surety by a request to have the contract terminate, or to have it enforced, change it, or avoid his liability. If the creditor does not proceed against the debtor at the proper time, the surety may file his bill *quia timet* to have the principal perform, and to obtain his own discharge; or he may upon equitable terms be substituted and proceed against the principal in the name of the creditor; or he may in many cases by indemnifying the creditor compel him to proceed against the principal. And if the creditor so conducts as to destroy or impair any of these rights of the surety he cannot call upon him to perform. These rights are impaired when the creditor has disenabled himself to proceed against the debtor at law; or has placed himself in such a position, that the debtor can in equity obtain an injunction against his proceeding; for if the creditor by reason of such obstacle cannot enforce the contract, the surety is deprived of the power of doing it. When therefore the creditor before the day of payment makes a contract without the consent of the surety, whereby he gives time, and is thereby prevented from compelling payment at the day, the surety is discharged. But such contract like all others, to be binding must be based upon a sufficient consideration. *Dewey* v. *Derby*, 20 *Johns. R.* 462; *Norris* v. *Crummey*, 2 *Rand.* 333; *McLemore* v. *Powell*, 12 *Wheat.* 554. These rules appear to be well established; but whether giving time, by a parol agreement, to the obli-

gor of a bond, or other instrument under seal, will discharge the surety may be more questionable; for the authorities are contradictory and cannot be reconciled.

In an action of debt upon a recognizance of bail, it was decided in the court of Exchequer, that a parol contract giving time to the principal, did not discharge the surety; and this decision was affirmed in the Exchequer Chamber and House of Lords. *Bulteel* v. *Jarrold*, 8 *Price*, 467. And in an action of debt on a bond, where the time of payment had been extended by parol, the court of King's Bench considered itself bound by the strict rule of law, that an obligation existing by an instrument under seal can be discharged only by one of equal dignity; and that the surety must resort to equity for relief. *Davey* v. *Pendergrass*, 5 *B. & Al.* 187. In an action upon a replevin bond, where the proceedings in the replevin suit had been stayed by agreement pending a reference, the Court of Common Pleas decided that the surety was not thereby discharged. *Moore* v. *Bowmaker*, 6 *Taunt.* 379, and 7 *Taunt.* 97. The surety however, filed his bill on the equity side of the court of Exchequer and obtained an injunction upon that judgment; that court upon full consideration having come to the conclusion, that he was discharged. 3 *Price*, 214. And in the case of *Archer* v. *Hale*, 4 *Bing.* 464, the decision in *Moore* v. *Bowmaker* was overruled in the Court of Common Pleas, and a surety under like circumstances was discharged. *Mr. Theobald*, however, does not consider the cases in 3 *Price*, and 4 *Bing.* as at variance with the rule adhered to in *Davey* v. *Pendergrass*, because the reference being made a rule of court, and containing in itself the agreement to stay proceedings, may be regarded as a record. *Theob. Prin. & Sur. sec.* 156. In a note to *Hunt* v. *Bridgham*, 2 *Pick.* 585, 2d ed., it is said that " it is no defence at law to an action on a bond against a surety, that by a parol agreement time has been given to the principal," and several cases are cited, but they do not appear upon examination, to add much to the weight of those before named, unless the case of *Fullam* v. *Valentine*, 11 *Pick.* 156, may be so regarded. But that case does not appear to have been decided upon the principle, that a parol agreement could not discharge, but upon the ground that by their stat-

ute provisions, " the rights of the bail in regard to the principal were not affected by the agreement in the case."

The time of the performance of the condition of a bond may be enlarged by parol. *Fleming* v. *Gilbert*, 3 *Johns. R.* 528 ; *Langworthy* v. *Smith*, 2 *Wend.* 587. And in the latter case it is said that the party thereby " loses his remedy upon the covenant itself, and must seek it upon the agreement changing the time of performance." If so, it is very obvious, that the remedy of an obligee upon his bond may be destroyed by a parol contract; and such was the decision in *Ellenwood* v. *Dickey*, 9 *Greenl.* 125. It will be perceived that the cases, which deny that a surety on a contract under seal can be discharged at law by parol, admit, that the surety may resort to equity, and obtain relief. If that be correct, so may the principal, when the parol contract is attempted to be violated. It has been before shewn, that in such case, the rights of the surety are impaired. And when his rights are impaired, according to the modern decisions he has a legal defence. Upon principle therefore, the soundness of the decisions, which deny, that the surety is in such cases discharged at law may be doubted.

The surety on a bond was held to be discharged by the obligee's taking the notes of the principal and thereby giving time. *Rees* v. *Berrington*, 2 *Ves. Jr.* 540. This was in equity, but the Lord Chancellor says " where a man is surety at law for the debt of another, payable at a given day, if the obligee defeats the condition of the bond he discharges the security." In the case of the *Bank of Ireland* v. *Beresford*, 6 *Dow*, 233, the Lord Chancellor in delivering his opinion in the House of Lords says, " with respect to principal and surety in a bond, where the creditor enters into an agreement or binding contract with the principal debtor to give him further time without the concurrence of the surety, the surety is discharged." But whatever of doubt there may be in *England* upon this question, there is great weight of authority in the decisions in this country which determine, that a surety on a sealed instrument may be discharged by a parol agreement giving time to the principal. This question arose in the case of *United States* v. *Howell*, 4 *Wash. C. C. R.*      , and in speaking of the case of *Davey* v. *Pendergrass* it is said, " if in this case the court meant to lay it down as law, that a surety in a bond conditioned for the payment of

money, or the performance of certain acts by a third person, cannot be discharged from his obligation except by some instrument of equal dignity, I must be permitted to dissent from such a doctrine ; and to maintain, that it is insupportable by a single authority." After giving certain reasons why such cannot be the law, that eminent Judge says, "the question at law, then is, whether the contract of the surety has without his consent been changed by the obligee ?  If it has, the obligee has by his own act defeated the condition of the surety's bond, and consequently discharged him from his obligation at law as well as in equity." Other courts of the highest character have come to like conclusions.  *Rathbone* v. *Warren,* 10 *Johns. R.* 587 ; *Norris* v. *Crummey,* 2 *Rand.* 333 ; *Bank of Steubenville* v. *Adm'rs of Carrol,* 5 *Ham.* 207 ; *Sprigg* v. *the Bank of Mount Pleasant,* 10 *Peters,* 257.

By the facts agreed in this case, it appears, that the contract for delay was made before the bond was forfeited ; and it partakes of all the elements required to discharge the surety, if there is proof of a sufficient consideration to make it a binding contract.  It is signed only by the plaintiff.  The defendant did not become a party to it, or in any other way bind himself to perform what the contract contemplated that he should do.  Nor does it appear, that he paid any thing, or sustained any injury, or parted with any right. There was sufficient time remaining before the bond was forfeited, to have notified the plaintiff anew, and made a new disclosure ; and having removed the obstacles, he might have been discharged, and thus performed the condition of his bond.  In this mode he might have rendered the contract signed by the plaintiff wholly inoperative.  Nor does it appear that he omitted to do this in consequence of the paper signed by the plaintiff.  There is nothing in the agreed statement from which the court can infer, that there was any consideration whatever for the contract signed by the plaintiff. It appears to have been a mere voluntary offering, of which the defendant might avail himself, or disregard it, and exercise all his rights, at his own pleasure ; and the Court is constrained to come to the conclusion, that the agreed statement does not disclose any consideration to render the contract binding, and that it can have no influence in the case.  According to the agreement the defendants are to be defaulted,