# BETSEY H. ARBUCKLE

v.

# CHARLES TEMPLETON.

GENERAL TERM, 1892.

*Promissory note. Joint and several note. Surety may show his relation. Endorsement as evidence. Communication to attorney privileged. Omission to produce evidence.*

1. A promissory note written "I promise to pay," and signed by two persons, is a joint and several note.

2. If the payee of such note knows, at the time the same is given, that one of the signers is a surety for the other, that fact may be shown by the surety in a suit on the note against him by the payee.

3. General assumpsit will not lie against a surety.

4. The note bore this endorsement: "July, 1884. Received 50 dollars to apply on the within note, of Charles Templeton." The money to make this payment was handed to the plaintiff by one W, and the question was whether it was furnished by Charles Templeton, who was the defendant. *Held*, that the endorsement, which was in the handwriting of the plaintiff, was improperly allowed to go to the jury, for it contained the recital of a fact of which the plaintiff had no knowledge.

5. Before bringing this suit the plaintiff consulted S, an attorney, about the collection of this note, and showed him the note. It was proposed to prove by S on this trial that the endorsement did not then contain the words "of Charles Templeton." *Held*, that his information in that respect was a privileged communication.

6.  The fact that the defendant omits to ask a question of his witness does not help the plaintiff to make out a *prima facie* case.

General assumpsit.  Plea, the general issue and statute of limitations.  Trial by jury at the September term, Washington county, 1891, START, J., presiding.  Verdict and judgment for the plaintiff.  The defendant excepts.  The opinion sufficiently states the points raised and decided.

*S. C. Shurtleff* for the defendant.

General assumpsit will not lie against a surety.  *Lapham* v. *Briggs*, 27 Vt. 26 ; *Curtis* v. *Smith*, 48 Vt. 116 ; *Austin* v. *Burlington*, 34 Vt. 512.

The endorsement was improperly sent to the jury.  *Lapham* v. *Kelley*, 35 Vt. 195 ; *Barber, Admr.*, v. *Bennett*, 62 Vt. 50.

The omission of defendant to ask Mallory who furnished the money with which to make the payment was not evidence in favor of the plaintiff.  *Scovill* v. *Baldwin*, 27 Conn. 318.

*Wing & Fay* for the plaintiff.

The endorsement properly went to the jury.  R. L. § 975 ; *Bailey* v. *Danforth*, 53 Vt. 504 ; *Lawrence* v. *Crane's Estate*, 60 Vt. 657.

The testimony of Shurtleff was properly excluded.  His information was obtained from the relation of attorney and client.  *Doon* v. *Swan*, 30 Vt. 6 ; *Earl* v. *Grout*, 46 Vt. 113 ; *Strong* v. *Dodds*, 47 Vt. 348 ; *Hicks* v. *Blanchard*, 60 Vt. 673.

Assumpsit would lie.  *Claremont Bank* v. *Wood*, 10 Vt. 582 ; *Dunham* v. *Downer*, 31 Vt. 249 ; *Brooks* v. *Thatcher*, 49 Vt. 492 ; *Benedict* v. *Cox*, 52 Vt. 247 ; *Damon* v. *Par-*

*dow et al.*, 34 Cal. 278; *Anthony* v. *Fritts*, 45 N. J. Law 1; *Dart* v. *Sherwood*, 7 Wis. 523.

The opinion of the court was delivered by

ROWELL, J.   This is general assumpsit.   Defendant and one Mallory signed a note to the plaintiff that reads, "For value received I promise to pay," etc.   This, in legal effect, is a joint and several note.

Plaintiff testified that the defendant did not want the money himself, but said he knew of a person who did want it, and that she asked him if it was one with whom he would sign, and he said it was, and that afterwards Mallory came to her house with the note, and she let him have the money. No claim was made that the defendant ever had any of the money.   It thus appears that the defendant was in fact a surety, and that the plaintiff knew it when she let the money go; and the question is, whether recovery can be had against him on the common counts.   The plaintiff claims that it can, for that to her the defendant stands a principal, because such is the legal effect of his contract, and that therefore he cannot be heard to say that he is a surety, although he is such in fact.

But this position is not tenable.   When each signer expressly promises as principal, he is taken to have waived thereby the rights of a surety as far as the interpretation and the enforcement of the contract is concerned, although he may be in fact a surety.   *Claremont Bank* v. *Wood*, 10 Vt. 582; *Benedict* v. *Cox*, 52 Vt. 247.   But even this is not so when a signer affixes the word *surety* to his name, for that is regarded as notice to the holder of the relation in which he stands, and that he claims the benefit of that relation, and does not waive it.   *People's Bank* v. *Pearsons*, 30 Vt. 711.

But although a note does not show that a signer is a surety, yet, if by its terms he has not waived the rights inci-

dent to that relation, he may show as against the payee that he is a surety if the payee knew it when the note was given; and a mere joint and several note is held not to be such a waiver. *Admr. of Wilson* v. *Green*, 25 Vt. 450; *Bank of St. Albans* v. *Smith*, 30 Vt. 148; *Hubbard* v. *Gurney*, 64 N. Y. 457; *Grafton Bank* v. *Kent*, 4 N. H. 221; (17 Am. Dec. 414 and note); *Dickerson* v. *Board of Commissioners of Ripley County*, 6 Ind. 128; (63 Am. Dec. 373).

No authorities need be cited to show that general assumpsit cannot be maintained against a surety.

The note, when produced on trial, had this indorsement upon it: "July, 1884. Received 50 dollars to apply on the within note, of Charles Templeton." The question was whether the defendant gave that money to a Mr. Willard, who handed it to the plaintiff, and was dead. If defendant did furnish the money the note was not outlawed as to him, otherwise it was. It was error to allow the indorsement to go to the jury, because, if for no other reason, it contained a statement that the money came from the defendant, which, if true, was of controlling importance, but of the truth of which the plaintiff, who wrote the indorsement, had no knowledge to which she could properly testify. *Barber* v. *Bennett*, 62 Vt. 50.

Before suit was brought the plaintiff showed this note to Mr. Shurtleff, now the defendant's attorney, and consulted him as to whether she could collect it of the defendant, and he gave her his opinion. The defendant now called Mr. Shurtleff as a witness, and offered to prove by him that when the note was thus shown to him said indorsement did not contain the statement that the money was received of the defendant; to which the plaintiff objected, and the testimony was excluded. It is claimed that this is error, for that the witness was not called to disclose what the plaintiff showed him, but to testify only to what he observed in respect of the state of the indorsement. But we think this was not error.

The general rule respecting privileged communications between attorney and client is well understood. The only difficulty lies in determining what comes within it. In *Crosby* v. *Berger*, 11 Paige 377, (42 Am. Dec. 117), Chancellor Walworth says it is a mistake to suppose that everything is privileged that comes to the knowledge of one while acting as attorney ; that the privilege extends only to information derived from the client as such, either by oral communications, or from books or papers shown him by his client or placed in his hands in his character of attorney.

*Dietrich* v. *Mitchell*, 43 Ill. 40, (92 Am. Dec. 99), was assumpsit by Mitchell against Dietrich as guarantor of a promissory note. Dietrich was payee of the note, and indorsed it, but over his name, in a different handwriting, was written an assignment and a guaranty, and he denied the guaranty. The defendant called an attorney as a witness, who testified that he brought a former suit on this note, and that when the note was in his hands the name of Dietrich, the defendant, was indorsed on it, but that no guaranty was written above it. This evidence was objected to as falling within the rule of privileged communications between attorney and client, and the objection was sustained. In *Brown* v. *Payson*, 6 N. H. 443, it was adjudged that an attorney could not be required to testify concerning the state of a written instrument at the time he received it from his client for the purpose of bringing suit upon it. So in *Coveney* v. *Tannahill*, 1 Hill 33, (37 Am. Dec. 287), it was not permitted to show by an attorney that he had seen the paper in suit in the hands of his client, or received it from him, in a different state from that in which it was at the trial. The court said there is no solid distinction between an oral statement of a fact to counsel and a communication of the same fact by delivering to him a deed or other instrument. In *Wheatley* v. *Williams*, 1 M. & W. 533, it is held that an attorney is not compellable to state, when examined as a

witness, whether a document shown to him by his client in the course of a professional interview was then in the same state as when produced on trial, that is, whether it was then stamped or not.   In arguing for the admission of the testimony, Mr. Platt cited a passage from Buller's Nisi Prius, 284, thus :   "Suppose him witness to a deed produced in the cause, he shall be examined to the true time of execution. So if the question were about an erasure in a deed or will, he might be examined to the question whether he had ever seen such deed or will in other plight, for that is a fact of his own knowledge ; but he ought not to be permitted to discover any *confessions* his client may have made to him on such head." But Lord Abinger said that the passage must apply to a case where the attorney has his knowledge independently of any communication from his client; that it cannot mean that where an attorney, coming to his client for a confidential purpose, obtains some other collateral information that he would not otherwise have possessed, he can be compelled to disclose it.   Suppose, he says, an attorney, when searching for a deed belonging to his client, finds another deed that might operate to his client's prejudice, can it be said that he would be bound to disclose it?   If, therefore, he goes on to say, a document be exhibited to an attorney in pursuance of a confidential consultation with his client, all that appears on the face of the document is a part of the confidential communication.   *Brown* v. *Foster*, 1 H. & N. 736, is not opposed to the foregoing cases, for there the information was gained in the progress of a trial.   The case was this : Counsel attended before a magistrate on behalf of a person charged with embezzlement, and a book was produced by the prosecutor in which it was the duty of the accused to have entered a sum of money received by him, and there was no such entry.   On a second examination, the accused having had access to the book in the meantime, the book was again produced, and there was such an entry.   The accused having

subsequently brought an action for malicious prosecution, it was held that the counsel might give evidence as to whether the entry was in the book at the time of the first examination, since the state of the book was not information communicated to him by his client, but was knowledge that he acquired by his own observation during the trial, and that, too, in respect of a book produced by the other party.

The next question is, whether there was any evidence tending to show that the defendant gave Willard the fifty dollars that he handed plaintiff. The defendant called Mallory, the other signer of the note, as a witness, but omitted to ask him who furnished that money, nor did the plaintiff ask him; but she claims that the defendant's omission to ask him was evidence tending to show that the defendant furnished it, because he must have known that Mallory could tell whether he furnished it or not, and if he did not, the defendant must have.

But the mere omission to ask the witness was not substantive evidence that the defendant furnished the money. To so hold would be substituting conjecture for proof. Mr. Wharton says that the presumption arising from non-production cannot be used to relieve the opposing party from the burden of proving his case; but that when a *prima facie* case is proved, sufficient of itself to sustain a judgment, then a party refusing to exhibit books that would, if produced, settle the matter one way or the other, or to give other explanations, not only prejudices his case, but precludes himself from subsequently objecting that the case of the opposing party, though sufficient for judgment, did not introduce all the facts. 2 Whart. Ev., § 1,268. See, also, note to *Armory* v. *Delamirie*, 1 Smith's Lead. Cas. * 473; *Life & Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.*, 7 Wend. 31.

The remarks of Sir W. D. Evans in volume two of his Pothier, cited in the text of Best Ev., § 414, though referring to written evidence, are applicable here. "The mere

non-production," he says, "of written evidence which is in the power of a party, generally operates as a strong presumption against him. I conceive that has been sometimes carried too far by being allowed to supersede the necessity of other evidence, instead of being regarded as merely matter of inference in weighing the effect of evidence in its own nature applicable to the subject in dispute." And see *Scovill* v. *Baldwin*, 27 Conn. 318, where it is held that the non-production of a witness, equally within the control of both parties, affords no ground for an unfavorable inference against either party.

But it is claimed that there was other evidence tending to show that the defendant furnished that money. It would serve no good purpose to refer to the evidence in detail and state our views upon it. It is sufficient to say that a majority of the court think there is no evidence in the record that has such tendency, unless it may be the indorsement itself, not including what it says about the money having been received of the defendant. Whether that is any evidence tending to show that the defendant paid the money, or was concerned in its payment, as he is a mere surety, it is not necessary to decide; for if it is such evidence, it is not of itself sufficient, as the statute says.

There are no other questions that need be considered.

*Judgment reversed and cause remanded.*